OPINION
{¶ 1} Keith Greenwood appeals from his conviction and sentence in Montgomery County Common Pleas Court on one count of possessing more than one-hundred grams of crack cocaine with a major-drug-offender specification.
 {¶ 2} Greenwood advances ten assignments of error on appeal. First, he contends the trial court erred in overruling his pretrial motion to suppress evidence. Second, he claims the trial court erred in failing to find a violation of his due process rights based on the State's failure to preserve some evidence and its failure to provide other evidence through discovery. Third, he challenges the legal sufficiency and manifest weight of the State's evidence to support his conviction. Fourth, he argues that he was deprived of an impartial jury. Fifth, he asserts that prosecutorial misconduct deprived him of a fair trial. Sixth, he contends the trial court erred in providing an improper jury instruction. Seventh, he claims that he received ineffective assistance of counsel. Eighth, he argues that an erroneous evidentiary ruling deprived him of a fair trial. Ninth, he asserts that the trial court erred in failing to conduct a proper sentencing hearing. Tenth, he contends the cumulative effect of the foregoing errors deprived him of a fair trial.
 {¶ 3} For the reasons set forth below, we find no merit in any of Greenwood's assignments of error. Accordingly, we will affirm the judgment of the Montgomery County Common Pleas Court.
 Factual and Procedural Background {¶ 4} While on patrol with his K-9 dog, Kain, Clayton Police Officer Brandon Combs observed Greenwood run a red light. Combs then followed Greenwood and noticed a marked-lanes violation. As a result, he reported Greenwood's license plate number to the dispatcher and initiated a traffic stop. Upon approaching the stopped vehicle, Combs noted that Greenwood's hands were shaking, he was short of breath, and he avoided eye contact. Greenwood also fumbled nervously through his paperwork and dropped a proof-of-insurance document.
 {¶ 5} Greenwood informed Combs that he was traveling from Arizona to visit a cousin because there had been a death in the family. He added that he did not know exactly where he was going but knew that he was close. As he interacted with Greenwood, Combs noticed marijuana leaves and seeds on the front passenger seat and floorboard. While awaiting information from the dispatcher, Combs had Kain perform a drug sniff on the stopped vehicle. Kain alerted on the trunk and on the passenger side near where Combs had observed the marijuana. Combs then opened the trunk and found a large quantity of crack cocaine and approximately $5,000 inside a suitcase.
 {¶ 6} Greenwood subsequently was indicted on one count of possessing more than one-hundred grams of crack cocaine with a major-drug-offender specification. He filed an unsuccessful motion to suppress, and the matter proceeded to trial before a jury on February 3-4, 2003. After the jury found Greenwood guilty, the trial court imposed a mandatory ten-year prison sentence. This timely appeal followed.
 II. Analysis {¶ 7} In his first assignment of error, Greenwood contends the trial court erred in overruling his pretrial motion to suppress evidence. In support, he first argues that while a non-consensual canine drug sniff of a lawfully detained vehicle is permissible, his consent was required because Officer Combs' continued detention of his car to allow the drug sniff was not supported by probable cause or even a reasonable, articulable suspicion of criminal activity. In a second argument, Greenwood asserts that Combs' search of the car's trunk was unlawful because the officer lacked probable cause to believe that he possessed anything more than a small amount of marijuana. In support of this argument, Greenwood challenges the reliability of Combs' drug-sniffing dog, Kain. He asserts that the State failed to establish the dog's reliability, thereby rendering its "hit" on the trunk insufficient to establish probable cause to search.
 {¶ 8} Upon review, we find no merit in either of the foregoing arguments. As an initial matter, Greenwood does not dispute that Combs' initial stop was lawful because it was based on two traffic violations. See Whren v. United States (1996),517 U.S. 806; Dayton v. Erickson (1996), 76 Ohio St.3d 3. With regard to Greenwood's argument that Combs unlawfully prolonged the stop to conduct a drug sniff, the record persuades us otherwise. "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. * * * `In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" State v. Ramos, 155 Ohio App.3d 396,2003-Ohio-6535 (citation omitted).
 {¶ 9} Unlike the typical case involving a defendant's prolonged detention while a drug-sniffing dog is brought to the scene, Officer Combs is part of a K-9 unit and his dog already was present. Based on our review of the record, we are persuaded that Combs diligently conducted his traffic stop and performed the drug sniff before it was completed. Combs stopped Greenwood shortly after 7:40 p.m. (Suppression hearing transcript at 4, 7). At 7:45 p.m., Combs was in the process of obtaining registration and insurance information from Greenwood. (Id. at 36-37). At 7:52 p.m., the dispatcher informed Combs that Greenwood had a criminal history that included weapons and drug charges. (Id. at 44). At 8:01 p.m., Combs performed the drug sniff with his dog Kain. (Id. at 79-80). Combs performed the drug sniff while still awaiting a response from the dispatcher regarding the status of Greenwood's driver's license and the owner of the car. (Id. at 13, 82). As a result, the record does not reflect that Greenwood's detention was impermissibly prolonged to facilitate the drug sniff. Rather, the record indicates that the drug sniff occurred while the vehicle was lawfully detained for a reasonable period pursuant to a valid traffic stop.
 {¶ 10} Even if Greenwood had been detained longer than necessary to complete the traffic stop in order to facilitate a drug sniff, we would find no basis for suppressing the crack cocaine. In order to detain a vehicle for the purpose of conducting a drug sniff, police must have reasonable suspicion that the vehicle contains drugs. State v. Heard, Montgomery App. No. 19323, 2003-Ohio-1047. In the present case, Combs had more than reasonable suspicion to believe that Greenwood's car contained drugs. Indeed, upon approaching the vehicle he actually saw marijuana seeds and leaves on the passenger seat and floorboard.[1] (Suppression hearing transcript at 10). As a result, we would find no violation of Greenwood's constitutional rights even if he had been detained to allow Kain to conduct a drug sniff.
 {¶ 11} Finally, we reject Greenwood's argument that Combs unlawfully searched the suitcase in the vehicle's trunk. The search was permissible for two reasons. First, the Ohio Supreme Court has recognized that "[o]nce a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." State v. Moore, 90 Ohio St.3d 47, 51,2000-Ohio-10 (holding that the odor of marijuana justified an automobile search). In the present case, Officer Combs' observation of marijuana on the passenger seat and floorboard gave him probable cause to believe that the vehicle contained contraband Therefore, he was entitled to search the entire vehicle, including the trunk and its contents. United States v.Ross (1982), 456 U.S. 798.
 {¶ 12} The search of Greenwood's suitcase also was permissible because Kain had alerted on the vehicle's trunk. "Once a narcotics trained dog alerts to the presence of contraband, probable cause exists for a further search of the vehicle."State v. Keller (Jan. 14, 2000), Montgomery App. No. 17896. Although Greenwood contends the State failed to establish Kain's reliability, the record does not support his claim. The trial court found that Kain is a reliable drug detector. This factual finding is supported by Kain's training and activity logs and his state certifications. Greenwood argues, however, that certain training and performance records were missing and that Kain was less experienced than Combs claimed. These arguments, which go to the "credibility" of the dog, were primarily for the trial court to resolve. State v. Calhoun (May 3, 1995), Lorain App. No. 94CA005824. In any event, we find no error in the trial court's determination that Kain was sufficiently trained and reliable. Kain was state-certified as a drug-detection dog. In addition, the records that Combs produced indicate that Kain had detected drugs on numerous occasions. Combs also testified that Kain never had a "false alert" in which the absence of drugs could not be attributed to something other than canine error. As a result, the record supports a finding that Kain's "hit" on Greenwood's trunk provided Combs with probable cause to search the suitcase contained therein. Greenwood's first assignment of error is overruled.
 {¶ 13} In his second assignment of error, Greenwood claims the trial court erred in failing to find a violation of his due process rights based on the State's failure to preserve some evidence and its failure to provide other evidence through discovery. In particular, Greenwood contends that the State failed to preserve the marijuana found in his car and the lab results, some of Kain's drug-sniff performance records, and a full police dispatcher's tape of the traffic stop. Greenwood also asserts that the State failed to produce through discovery a videotape of his arrest.
 {¶ 14} Upon review, we find no violation of Greenwood's rights. A defendant may prevail on a claim regarding the destruction of evidence if the State either (1) failed to preserve materially exculpatory evidence or (2) in bad faith destroyed potentially useful evidence. State v. Franklin,
Montgomery App. No. 19041, 2002-Ohio-2370. In order to be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means." Id. Furthermore, "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," is not materially exculpatory. State v. Christian (Dec. 17, 1999), Montgomery App. No. 17824. When evidence is only potentially exculpatory, the destruction of such evidence does not violate due process unless police acted in bad faith. Id. "The term `bad faith' generally implies something more than bad judgment or negligence. `It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" Franklin, supra, quoting State v. Buhrman (Sept. 12, 1997), Greene App. No. 96 CA 145.
 {¶ 15} In the present case, Greenwood utterly fails to explain how the marijuana observed on his seat and floorboard would have had any exculpatory value if Combs had collected and preserved it during the traffic stop. Indeed, it does not appear that preservation of the marijuana even would have been potentially useful to Greenwood's defense given that he was not charged with any marijuana-related offense. In any event, even if the marijuana might have been potentially useful, we would find no due process violation because the State did not act in bad faith. Officer Combs testified that he did not collect and preserve the marijuana because it was of little significance after he discovered a large quantity of crack cocaine in the trunk. He also testified that the marijuana became dispersed as he searched the interior of the car. (Suppression hearing transcript at 55, 85). Thus, the record does not portray bad faith. Finally, given that the marijuana was not collected, the State could not have destroyed any lab reports concerning it.
 {¶ 16} With regard to the destruction of some of Kain's performance records, the record does not reflect that they were materially exculpatory. Indeed, the content of the missing records is unknown. Thus, they were at most potentially exculpatory. As noted above, when evidence is only potentially exculpatory a defendant cannot prevail unless police destroyed it in bad faith. In the present case, Officer Combs testified that he simply lost some of Kain's older performance records. (Trial transcript at 174). Although this explanation may suggest negligence, it does not demonstrate bad faith.
 {¶ 17} We reach the same conclusion with regard to the police dispatcher's tape of the traffic stop. Greenwood contends that he requested the full tape from thirty minutes before his traffic stop until after his arrest. In response to his request, he received an edited, three and one-half-minute tape pertaining to his traffic stop. The other portions of the tape that Greenwood requested were recorded over with new data. Although Greenwood did not receive a tape covering the full time period that he requested, he did receive everything on the audiotape that pertained to his traffic stop and arrest. (Suppression hearing transcript at 72-74). Nothing in the record suggests that the excluded portions were materially exculpatory. In fact, given that the excluded portions appear to have been irrelevant to the events in question, we doubt whether they even were potentially useful to Greenwood's defense. In any event, the record once again fails to reflect bad faith on the part of the State. Combs explained that the dispatcher isolated those portions of the tape pertaining to Greenwood's traffic stop for purposes of clarity because several police departments use the same frequency and the tape contained multiple conversations. Although Greenwood is unhappy with what he received, we find no bad faith (and also no apparent value in the excluded portions).
 {¶ 18} Finally, Greenwood cites testimony from Combs indicating that his police car had videotaping capabilities. Greenwood argues that the State violated discovery rules by failing to provide him with a videotape of his traffic stop. We find no merit in this argument. Combs merely testified that his routine when coming on duty includes checking to see whether his video equipment is operating properly. (Trial transcript at 124). Greenwood cites nothing, however, to establish that Combs actually activated the equipment and made a videotape of the traffic stop in this case. As a result, Greenwood has failed to demonstrate any discovery violation. His second assignment of error is overruled.
 {¶ 19} In his third assignment of error, Greenwood challenges the legal sufficiency and manifest weight of the State's evidence to support his conviction. In particular, he argues that the State failed to prove his actual or constructive possession of the crack cocaine found in the car he was driving.
 {¶ 20} Upon review, we find no merit in Greenwood's argument. When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law.State v. Hawn (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus.
 {¶ 21} When a conviction is challenged on appeal as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} On appeal, Greenwood addresses the legal sufficiency and manifest weight issues together. He asserts that he did not have actual possession of the crack cocaine and that the record fails to support a finding of constructive possession. In support, he notes that the crack cocaine was found in the trunk of a car that was registered to someone else. He also argues that the crack cocaine was discovered in a suitcase-type duffle bag wrapped in clothing that was not identified as his. As a result, he insists that the State failed to prove the "possession" element of his offense.
 {¶ 23} Upon review, we are unpersuaded by Greenwood's argument. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. State v. Hankerson (1982), 70 Ohio St.2d 87, at syllabus. In the present case, the State presented evidence that Greenwood, the sole occupant of the vehicle, had driven from Arizona to Ohio and had stayed in hotels along the way. (Trial transcript at 132, 139). The State also presented evidence that the crack cocaine was found inside a suitcase underneath clothing that appeared to be Greenwood's size. (Id. at 150-159). The suitcase was the only object in the trunk. (Id. at 150). Given that Greenwood had traveled a great distance and had lodged at hotels, the jury reasonably could infer that the suitcase and its contents belonged to him. The record also reflects that Greenwood exhibited extreme nervousness, including uncontrolled shaking, upon being stopped by Officer Combs. (Id. at 135). This behavior lends support to an inference that he knew the crack cocaine was in the trunk. Finally, the fact that someone else owned the car, and possibly the crack cocaine, is not dispositive. The State was required to establish only Greenwood's constructive possession, not ownership, of the drugs. State v. Mann (1993),93 Ohio App.3d 301, 308.The foregoing evidence is legally sufficient to support a finding that Greenwood constructively possessed the crack cocaine, and such a finding is not against the manifest weight of the evidence. Accordingly, we overrule Greenwood's third assignment of error.
 {¶ 24} In his fourth assignment of error, Greenwood argues that he was deprived of his right to an impartial jury. In particular, he contends that the prosecutor improperly tainted the jury by engaging the following exchange with prospective juror Watson during voir dire:
 {¶ 25} "MS. DROESSLER: Ms. Watson, how are you?
 {¶ 26} "PROSPECTIVE JUROR WATSON: (No audible response.).
 {¶ 27} "MS. DROESSLER: You own a retail gallery store; is that correct? Or you're part owner?
 {¶ 28} "PROSPECTIVE JUROR WATSON: Yes.
 {¶ 29} "MS. DROESSLER: What type of gallery store?
 {¶ 30} "PROSPECTIVE JUROR WATSON: Art — local artists.
 {¶ 31} "MS. DROESSLER: Oh. Interesting. Where is it located at because I'm looking at redecorating my house?
 {¶ 32} "PROSPECTIVE JUROR WATSON: It's in Vandalia on Route 40.
 {¶ 33} "MS. DROESSLER: Okay. So is it all local artists within the Miami Valley?
 {¶ 34} "PROSPECTIVE JUROR WATSON: Mostly.
 {¶ 35} "MS. DROESSLER: Okay.
 {¶ 36} "PROSPECTIVE JUROR WATSON: We also have some outside (inaudible).
 {¶ 37} "MS. DROESSLER: Interesting. Is it — do you have photographs or like — because, you know, you have those photographers who do like scenic photography and ____.
 {¶ 38} "PROSPECTIVE JUROR WATSON: We have frame photography. We have original oils and water color artists and jewelry artists and pottery, that kind of thing.
 {¶ 39} "MS. DROESSLER: Neat. Very neat. Let me ask you, do you think you could be a fair and impartial juror in this case?
 {¶ 40} "PROSPECTIVE JUROR WATSON: Yes, I do." (Trial transcript at 47-48).
 {¶ 41} On appeal, Greenwood argues that the prosecutor's questioning suggests that she "has offered prospective juror Watson an incentive (future business) to render a verdict in the State's favor." As a result, Greenwood reasons that the prosecutor's questioning deprived him of his right to an impartial jury.
 {¶ 42} We find no merit in Greenwood's argument. Even if some of the prosecutor's remarks were superfluous, it is apparent to us that the brief exchange amounted to nothing more than small talk. No reasonable person would interpret the prosecutor's comments as an attempt to "buy" a vote from prospective juror Watson. Consequently, we cannot agree that the record reveals a violation of Greenwood's right to an impartial jury. His fourth assignment of error is overruled.
 {¶ 43} In his fifth assignment of error, Greenwood asserts that prosecutorial misconduct deprived him of a fair trial. In particular, he argues that the prosecutor (1) improperly failed to preserve evidence, (2) tainted the jury by speaking with a potential juror about a prospective business arrangement, (3) appealed to the jurors' emotions by stressing the weight of the crack cocaine and by referring to it once as "poison," (4) suggested that he had won the money found in the suitcase through gambling, and (5) used an improper analogy in closing argument.
 {¶ 44} We find no merit in any of the foregoing issues. Greenwood's argument regarding the failure to preserve evidence concerns the marijuana observed on the seat and floorboard of the car, Kain's dog training records, and audiotape/videotape evidence discussed in connection with his second assignment of error, supra. As the State properly notes, however, the marijuana and dog training records were lost or destroyed before the prosecutor became involved in the case. In addition, the prosecutor made a request for the full audiotape, which was destroyed by the dispatcher after the request. Nothing before us suggests that the prosecutor was responsible for the destruction of the full audiotape. Finally, Greenwood has failed to establish the existence of a videotape of the traffic stop. As a result, we find no prosecutorial misconduct arising from the failure to preserve evidence.
 {¶ 45} With regard to Greenwood's argument that the prosecutor improperly tainted the jury, we fully addressed this issue in our analysis of his fourth assignment of error. For the reasons set forth in that portion of our opinion, we find nothing improper about the prosecutor's dialogue with prospective juror Watson. Greenwood's argument that the prosecutor improperly appealed to the jurors' emotions is equally unpersuasive. Statements about the weight of the crack cocaine were fair comments on the evidence, and the prosecutor's isolated reference to crack cocaine as "poison" was within the permissible bounds of closing argument.
 {¶ 46} We also find nothing improper in the prosecutor's remark during closing argument that perhaps Greenwood had won a large amount of money gambling. Upon being questioned by Combs during the traffic stop, Greenwood stated that he had done some gambling on his way from Arizona to Ohio. The record reflects that Officer Combs then discovered the crack cocaine and approximately $5,000 in a suitcase he found in the trunk of the car Greenwood was driving. In light of this evidence, the prosecutor told the jury during closing argument:
 {¶ 47} "There's five thousand dollars. I'm not sure where it came from. Maybe he won it gambling. Hmm? It's in the same bag as the crack cocaine. We know he gambled. He told the officer he gambled. It's in the same bag as the crack cocaine. He stopped to get some — to sleep. His clothes are in the bag on top of the crack cocaine." (Trial transcript at 239).
 {¶ 48} Through the foregoing argument, the prosecutor appears to have been attempting to establish Greenwood's knowledge that the crack cocaine was in the suitcase. We find nothing improper about this line of argument.
 {¶ 49} Finally, we find no merit in Greenwood's claim that the prosecutor used an improper analogy in closing argument. The analogy in question involved a parent finding a bottle of alcohol hidden in a child's dresser drawer. The prosecutor explained how the existence of certain facts could support an inference that the child knew the alcohol was in the room. According to the prosecutor, such facts might include the child shaking uncontrollably and acting strangely when the parent opens the drawer. (Trial transcript at 220-225). Greenwood fails to explain what was improper about the analogy, and we find nothing objectionable. Accordingly, we overrule his fifth assignment of error.
 {¶ 50} In his sixth assignment of error, Greenwood contends the trial court erred in providing an improper jury instruction when explaining the concept of constructive possession.
 {¶ 51} The record reflects that the trial court orally instructed the jury as follows:
 {¶ 52} "* * * Possess means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the vehicle in which the thing or substance was found. Possession of drugs may be actual or constructive. A person has constructive possession of an item when he is conscious of the presence of the object and is able to exercise dominion and control over the item even if the item is not within his immediate physical possession.
 {¶ 53} "Although a person's presence in the vicinity of drugs does not without more establish constructive possession[,] readily accessible drugs located near a person is a factor that may be considered when considering whether constructive possession has been established. The fact that a person owns or leases the vehicle where drugs are found does not without more established [sic] constructive ownership or constructive possession, but ownership or possession of a vehicle where drugs are found may be considered when considering whether constructive possession has been established." (Trial transcript at 245-246).
 {¶ 54} Although Greenwood asserts that the foregoing instruction "makes little sense," he fails to identify anything in particular that is confusing or erroneous. In our view, the instruction adequately conveys the essence of constructive possession. Accordingly, we overrule Greenwood's sixth assignment of error.
 {¶ 55} In his seventh assignment of error, Greenwood claims he received constitutionally ineffective assistance of trial counsel. Such claims are assessed under the two-part test ofStrickland v. Washington (1984), 466 U.S. 668. "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448. When evaluating an ineffective assistance of counsel claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, supra, at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Bradley (1989),42 Ohio St.3d 136, 142.
 {¶ 56} In this case, Greenwood argues that his attorney provided ineffective assistance by failing to object to (1) the trial court's jury instruction on constructive possession, (2) the prosecutor's discussion of prospective juror Watson's art gallery during voir dire, and (3) the prosecutor's references, in opening statements and closing arguments, to the weight of the drugs found in the car he was driving. We find no merit in Greenwood's arguments. As we explained above, the trial court's jury instruction was adequate, the prosecutor's remarks to Watson were not improper, and the prosecutor's references to the weight of the crack cocaine were permissible. As a result, defense counsel did not provide deficient representation by failing to object. Greenwood's seventh assignment of error is overruled.
 {¶ 57} In his eighth assignment of error, Greenwood argues that an erroneous evidentiary ruling deprived him of a fair trial. This argument concerns his attorney's attempt to cross examine Officer Combs about alleged dead spots in his police radio reception. At the pretrial suppression hearing, Combs explained that a Sergeant Hamlin was sent to check on his safety because the dispatcher could not reach him. (Suppression transcript at 12). In particular, he stated: "* * * I have a habit of not returning to my cruiser until after the traffic stop is completely over. * * * [M]y dispatch[er] had been checking up on me. Uh . . . I did not hear my radio, we have spots in our city, or outside of our city that, uh . . . don't receive radio transmissions extremely well. Uh, I went ahead and checked up with our dispatcvher — she had already sent my supervisor to come check on me, to make sure everything was okay." (Id.).
 {¶ 58} On direct examination at trial, Officer Combs testified that Sergeant Hamlin arrived on the scene to assist him. Combs did not explain how or why Hamlin happened to arrive, however, because defense counsel objected to such questioning and the trial court sustained the objections. (Trial transcript at 140). Thereafter, on cross examination Combs admitted that Hamlin had arrived because the dispatcher could not reach him. (Id. at 176). Defense counsel then attempted to question Combs about his suppression hearing testimony concerning spots where his police radio did not work well. (Id. at 176). The trial court sustained an objection by the prosecution, finding the testimony irrelevant. (Id. at 178).
 {¶ 59} On appeal, Greenwood appears to contend that the questioning was a legitimate attempt to impeach Combs. The basis of Greenwood's argument is that Combs said his radio was in a dead spot during the suppression hearing but later testified about contacting the dispatcher with his radio. This argument misconstrues Combs' testimony. At the suppression hearing, Combs did not testify that his radio was dead and, as a result, that he could not contact the dispatcher. Rather, he stated that he was away from the radio and could not hear it because it was receiving transmissions poorly. Nothing about this testimony is inconsistent with his later testimony that he initiated a transmission and spoke with the dispatcher during the traffic stop. As a result, we find no error in the trial court's decision to sustain the State's objection. Greenwood's eighth assignment of error is overruled.
 {¶ 60} In his ninth assignment of error, Greenwood presents a one-sentence argument objecting to the trial court's failure "to state that it had considered appropriate sentencing guidelines." We note, however, that the trial court was not required to consider the typical sentencing guidelines in this case because the penalty for Greenwood's offense was a mandatory ten-year term of incarceration. Pursuant to R.C. § 2925.11(C)(4)(f), the trial court lacked the discretion to impose anything less.[2]
Given that Ohio law required the trial court to impose the sentence that it did, we overrule Greenwood's ninth assignment of error.
 {¶ 61} In his final assignment of error, Greenwood argues that even if the errors he has alleged herein were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v. Thomas,
Clark App. No. 2000-CA-43, 2001-Ohio-1353. In our review of Greenwood's other arguments, however, we found no errors. Given that no multiple errors exist, we overrule his tenth assignment of error.
 III. Conclusion {¶ 62} Having overruled Greenwood's assignments of error, we affirm the judgment of the Montgomery County Common Pleas Court.
 {¶ 63} Judgment affirmed.
Fain, P.J., and Wolff, J., concur.
[1] We note that the present case is easily distinguishable from State v. Taylor (2000), 138 Ohio App.3d 139, upon which Greenwood relies. In Taylor, we held that an officer's discovery of a small quantity of marijuana in the pants pocket of a car's driver does not justify detaining and investigating the car's passengers for drug trafficking. This is so because a driver's personal possession of a small amount of drugs does not support a reasonable inference that the passengers are engaged in any criminal activity. Unlike Taylor, the question in the present case is whether an officer's observation of a small quantity of marijuana in a car provides reasonable suspicion to believe that the vehicle contains drugs. This question answers itself and requires no elaboration on our part.
[2] Because Greenwood was classified as a "major drug offender," the trial court could have imposed an additional sentence, which it elected not to do. See R.C. §2925.11(C)(4)(f). With regard to Greenwood's crack cocaine possession conviction, the trial court was not authorized to impose anything other than a ten-year term of incarceration. Id.