OPINION
{¶ 1} This is an appeal from Appellant's conviction and sentence on one count of felony drug possession, in violation of R.C. § 2925.11.
 {¶ 2} Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On April 2, 2004, Appellant Teresa Catalan was indicted on one count of felony drug possession.
 {¶ 4} On April 9, 2004, at her arraignment, Appellant entered a plea of not guilty to said charge.
 {¶ 5} On May 24, 2004, Appellant filed a Motion to Suppress.
 {¶ 6} On July 2, 2004, an oral hearing was held on the Motion to Suppress. The following testimony was heard at said suppression hearing:
 {¶ 7} On March 31, 2004, Appellant Teresa Catalan was the subject of surveillance by the Fairfield-Hocking Major Crimes Unit. Said surveillance was based on information received by Det. James from Det. Ehrenborg of the Columbus Police Department that she was in possession of a large quantity of cocaine that she would be transporting to the Columbus area. (Supp. T. at 6-8). Det. Ehrenborg received this information from a confidential informant who had spoken with Appellant. (Supp. T. at 29). Det. James testified that he had worked with Det. Ehrenborg five or six times in the past and believed him to be reliable. (Supp. T. at 7). Det. James further believed the information based on Appellant's past criminal history involving drug trafficking. (Supp. T. at 9).
 {¶ 8} Det. James testified that he and Det. Swope were en route to begin visual surveillance of Appellant when they observed her driving in her vehicle. (Supp. T. at 9). At that time, the detectives commenced following Appellant. Det. James testified that Appellant stopped at a known drug house, stayed for a short period of time and then left. (Supp. T. at 10). At this time, Det. James contacted the Lancaster Police Department for assistance in making a stop of Appellant. Id. Det. James also contacted Deputy Dixon who works with the canine unit of the Fairfield County Sheriff's Department. (Supp. T. at 11).
 {¶ 9} Deputy Feyko, a patrol deputy for the Fairfield County Sheriff's Department, testified that he was contacted by radio dispatch and informed that Major Crimes was requesting assistance in stopping a drug vehicle. (Supp. T. at 40). He testified that as he pulled in behind Appellant's vehicle, he noticed that her rear taillight and brake light were not working and the brake light located in the rear window was not working. (Supp. T. at 42, 48). Based on this equipment failure, Deputy Feyko effectuated a traffic stop. (Supp. T. at 45). Approximately five minutes later, Deputy Dixon arrived on the scene. Id. Deputy Dixon approached Appellant in her vehicle and informed her that he was going to run a narcotics dog around her vehicle. (Supp. T. at 60). The dog ran around the vehicle for approximately thirty seconds and indicated the presence of narcotics in the car on the passenger and driver's doors. (Supp. T. at 60, 62). Upon searching the vehicle, Deputy Dixon found a bag containing a large quantity of cocaine right next to where the dog had indicated. (Supp. T. at 62). Appellant was then placed under arrest, within ten minutes from being stopped.
 {¶ 10} In addition to the testimony of Det. James, Deputy Feyko and Deputy Dixon, the trial court also heard testimony from one witness on behalf of Appellant: Larry Webb. Mr. Webb is an attorney who works with Appellant's attorney. Atty. Webb testified that he inspected and photographed Appellant's vehicle approximately three months after the arrest and that the brake light in the rear window was functioning properly at that time. (Supp. T. at 64-66).
 {¶ 11} By judgment entry filed August 12, 2004, the trial court denied Appellant's Motion to Suppress.
 {¶ 12} On August 25, 2004, Appellant entered a plea of no contest to the violation of R.C. § 2925.11.
 {¶ 13} Based on her plea of no contest, the trial court found Appellant guilty and on September 23, 2004, sentenced her to three (3) years imprisonment.
 {¶ 14} It is from this conviction and sentence Appellant appeals, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 15} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS THE STATE OF OHIO FAILED TO ESTABLISH THAT THE INITIAL SEIZURE OF THE DEFENDANT-APPELLANT FIT WITHIN THE LIMITS OF THE OHIO AND UNITED STATES CONSTITUTIONS.
 {¶ 16} "II. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE AS THE STATE OF OHIO FAILED TO ESTABLISH THAT THE EXPANSION OF THE INITIAL SEIZURE FIT WITHIN THE LIMITS OF THE OHIO AND UNITED STATES CONSTITUTIONS."
 I., II. {¶ 17} In both assignments of error, Appellant argues that the trial court erred in denying her motion to suppress. We disagree.
 {¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93, 96; State v.Claytor (1993), 85 Ohio App. 3d 623, 627; State v. Guysinger (1993),86 Ohio App. 3d 592.
 {¶ 19} In the instant appeal, appellant's challenge of the trial court's ruling on her motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 20} In support of her assignments of error, appellant maintains the trial court should have granted her motion to suppress because the police officers did not have a reasonable articulable suspicion for making an investigatory stop.
 {¶ 21} In the case of State v. Dunwoody, Licking App. No. 2004CA49,2005-Ohio-219, this Court recently addressed the applicable standard when reviewing a motion to suppress concerning the question of whether an officer had reasonable suspicion to make an investigatory stop. InDunwoody, we stated:
 {¶ 22} "In the case of Omelas [sic] v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, the United States Supreme Court held that in reviewing a motion to suppress, the ultimate questions of whether an officer had reasonable suspicion to make an investigatory stop and whether an officer had probable cause to make a warrantless search are reviewed by an appellate court de novo. In conducting the appellate review, the court reviews the trial court's findings of the facts of the case only for clear error and with due weight given to inferences the trial judge drew from the facts. This comports with the mandate in State v. Mills (1992), 62 Ohio St.3d 357, 582 N.E.2d 972, wherein the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence. Then, however, we proceed to review trial court's application of law to those facts de novo. See, e.g., Statev. Beard (Mar. 26, 1996), Athens App. No. 95CA1685, unreported." (Emphasis sic.) Id. at ¶ 9.
 {¶ 23} In its judgment entry denying appellant's motion to suppress, the trial court determined the police officers had a reasonable articulable suspicion to make an investigatory stop of appellant.
 {¶ 24} In Terry v. Ohio (1968), 392 U.S. 1, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual, without probable cause, where the police officer reasonably suspects that the individual is or has been involved in criminal activity and is dangerous. The Supreme Court stated:
 {¶ 25} "* * * We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experiences that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Id. at 30.
 {¶ 26} "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. Thus, the propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, citing State v. Freeman (1980),64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 27} Initially, the trial court found that Officer Feyko was justified in stopping Appellant's vehicle due to the taillight violation.
 {¶ 28} R.C. § 4513.05 and § 4513.071 require vehicles to be equipped with at least one taillight and two brake lights.
 {¶ 29} R.C. § 4513.05 provides:
 {¶ 30} "Every motor vehicle, * * * shall be equipped with at least one tail light mounted on the rear which, when lighted, shall emit a red light visible from a distance of five hundred feet to the rear
 {¶ 31} * * *
 {¶ 32} R.C. § 4513.071 provides:
 {¶ 33} "(A) Every motor vehicle, . . . when operated upon a highway shall be equipped with two or more stop lights, except that passenger cars manufactured or assembled prior to January 1, 1967, motorcycles, and motor-driven cycles shall be equipped with at least one stop light. Stop lights shall be mounted on the rear of the vehicle, actuated upon application of the service brake, and may be incorporated with other rear lights. Such stop lights when actuated shall emit a red light visible from a distance of five hundred feet to the rear, provided that in the case of a train of vehicles only the stop lights on the rear-most vehicle need be visible from the distance specified."
 {¶ 34} These statutes clearly provide that motor vehicles need to have one operating taillight and two operating stop lights in order to be in conformity with the law.
 {¶ 35} Officer Feyko testified that Appellant's vehicle only had one working taillight and only one working brake light. The evidence that the vehicle only had one working brake light, standing alone, and in light of the aforementioned statute, provided the arresting officer with the requisite reasonable suspicion with which to stop appellant. State v.Miller (May 29, 1996), Ashland App. No. 95-COA-01137, unreported (Citation omitted). See also, State v. Vannest (Dec. 15, 1995), Athens App. No. 94CA1645, unreported.
 {¶ 36} The trial court also found that in addition to the non-operational brake light, Officer Feyko also had an independent reasonable basis to stop Appellant based on the information received by Det. James from Det. Ehrinborg that Appellant was engaged in criminal activity.
 {¶ 37} A police officer may briefly detain an individual for purposes of investigation whenever they reasonably suspect the individual is involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1. This belief may even be based upon information provided by an informant. Adamv. Williams (1972), 407 U.S. 143. In determining whether an objective and particularized suspicion exists to effect a Terry stop, the court must review the totality of surrounding circumstances. State v. Andrews
(1991), 57 Ohio St.3d 86, 87.
 {¶ 38} This Court has previously upheld cases similar to this one where the belief was based on information acquired through an informant.State v. Bateman (Aug. 31, 1995), Licking App. No. 94-CA-112.
 {¶ 39} In the instant case, as stated above, Det. James received the information concerning Appellant from Det. Ehrinborg, a colleague with whom he had a past relationship, and that Det. Ehrinborg received said tip from a known confidential informant who had proven reliable in the past. In addition, Det. James was familiar with Appellant's past drug charge.
 {¶ 40} It is well settled that when a trained narcotics dog alerts on a lawfully stopped vehicle, an officer has probable cause to search the vehicle. State v. Greenwood, Montgomery App. No. 19820, 2004-Ohio-2737, at ¶ 11-12.
 {¶ 41} Moreover, it is well established that the use of a trained narcotics dog does not constitute a "search" within the meaning of the Fourth Amendment. State v. Hudson, Miami App. No. 2003-CA-39,2004-Ohio-3140; Illinois v. Caballes (2005), 534 U.S. ___, 125 S.Ct. 834. Therefore, an "officer need not have formed a reasonable suspicion that drug-related activity is occurring in order to request that a drug dog be brought to the scene or to conduct a dog sniff of the vehicle." Keller,
supra (citations omitted).
 {¶ 42} A canine sniff by a drug detection dog of the exterior of a vehicle that is lawfully detained for a traffic stop does not implicate Fourth Amendment rights. Illinois v. Caballes (Jan. 24, 2005), ___ U.S. ___, 125 S.Ct. 834; State v. Ramos, supra; State v. Heard (March 7, 2003), Montgomery App. No. 19323, 2003-Ohio-1047. Police are not required to have reasonable suspicion that a vehicle contains drugs prior to conducting a canine sniff of the vehicle during a traffic stop so long as the duration of the traffic stop is not extended beyond what is reasonably necessary to resolve the issue that led to the stop and issue a traffic citation. Ramos, supra. If, however, the duration of the traffic stop is extended in order to bring a drug sniffing dog to the scene, police must have a reasonable suspicion that the vehicle contains drugs in order to justify the continued detention. Id.
 {¶ 43} Here, the entire stop, drug sniff and search lasted only ten minutes. Based on Caballes, supra, we find that same was not an unreasonable extension.
 {¶ 44} In the case sub judice, we have reviewed the transcript of the suppression hearing and based upon this testimony, we conclude the trial court's factual conclusion that the officer did not violate appellant's constitutional rights when they detained her for an investigatory stop, is supported by competent credible evidence.
 {¶ 45} Based on the foregoing, we find both of Appellant's assignments of error not well-taken and overrule same.
 {¶ 46} The decision of the Fairfield County Court of Common Pleas is affirmed.
Boggins, P.J. Farmer, J., and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Fairfield, Ohio, is affirmed. Costs assessed to Appellant.