OPINION
{¶ 1} Kevin McKee appeals from his conviction and sentence in Montgomery County Common Pleas Court on a fifth-degree felony drug-trafficking charge.
 {¶ 2} McKee advances three assignments of error on appeal. First, he contends the trial court should have sustained a pretrial suppression motion because police detained him without reasonable, articulable suspicion of criminal activity. Second, he argues that even if his initial detention was lawful, a warrantless search of his vehicle exceeded the scope of a *Page 2 
permissible investigatory detention. Third, he claims his drug-trafficking conviction was against the manifest weight of the evidence presented at trial.
 {¶ 3} Upon review, we conclude that police had reasonable, articulable suspicion to detain McKee's stopped vehicle. The record also persuades us that police lawfully removed McKee from his car and discovered drugs inside it. Finally, we find that McKee's conviction was not against the manifest weight of the evidence. Accordingly, the trial court's judgment will be affirmed.
 {¶ 4} Resolution of McKee's first two assignments of error requires a review of testimony presented at his August 9, 2007, suppression hearing. The sole witness at the hearing was Mark Spiers, a Dayton police sergeant. Spiers testified that he received a telephone call from a concerned citizen on April 3, 2007. The caller attended church with another police officer who referred the citizen to Spiers. The caller, whose name Spiers had forgotten by the time of the suppression hearing, complained of frequent drug transactions occurring in his neighborhood. The caller described the activity as involving two cars pulling up for a quick exchange of drugs. The caller said the transactions were occurring on his street and at nearby businesses, including a Speedway gas station. Spiers was familiar with the area and had made a number of drug-related arrests there.
 {¶ 5} After speaking with the caller, Spiers conducted surveillance across the street from the Speedway station that evening. Within a few minutes, he observed a female, later identified as Kim Hinds, walk over to a pay phone and make several calls. It appeared to Spiers that she could not get through because she kept dialing a number, reaching down to retrieve a coin from the coin return, and trying again. Eventually, Hinds spoke to someone for a short time before hanging up. She then walked to a green car parked at a gas pump, entered the car, and drove back to the pay phone, where she stopped and waited. *Page 3 
Approximately fifteen minutes later, a purple car entered the parking lot and pulled up next to Hinds' vehicle. Hinds exited her car and approached the driver's side of the purple vehicle, which was being driven by McKee. She leaned down to McKee's driver-side window and placed her hands inside his car. Spiers witnessed "some type of exchange" but could not see precisely what was taking place.
 {¶ 6} Based on his experience, Spiers testified that he believed he had witnessed a drug transaction. He explained that over the past five years, his department had "made hundreds of arrests where we've seen people use pay phones or be on a cell phone and they meet in businesses to conduct their drug transactions." Spiers radioed detective Rodney Barrett to assist him in making contact with Hinds and McKee. Spiers blocked the two cars from the front while Barrett blocked them from the rear.
 {¶ 7} Spiers then approached McKee as Barrett moved toward Hinds. Spiers repeatedly ordered McKee to turn off his car and to show his hands. McKee responded by dipping his shoulder as if he were reaching down for something near the door panel. Fearful that McKee might be retrieving a weapon, Spiers opened the driver's door, ordered McKee to exit the vehicle, and patted him down for weapons. When he opened the door, Spiers noticed a baggie of marijuana and a cell phone on the center console. During the pat-down, McKee was "kind of twist[ing] about[.]" Spiers perceived this passive resistance as an attempt to distract him from something a female passenger was doing inside McKee's car. As Spiers was dealing with McKee, he observed the passenger "bending forward and reaching down around her legs." After handcuffing McKee, Spiers and Barrett removed the passenger from the car. Spiers then saw her take a plastic bag away from her mouth. He noticed that the corner of the empty bag had been torn or bitten off.
 {¶ 8} After the passenger was placed in a cruiser, Spiers returned to the car to *Page 4 
retrieve the marijuana he had seen on the console. As he did so, he noticed a second plastic baggie in the driver's door pocket, where McKee had been reaching. The baggie contained two Vicodin pills. Spiers then advised McKee of his Miranda rights and obtained a waiver. McKee initially denied knowing Hinds. He then admitted knowing her but insisted that he met her at the Speedway station to discuss a car for sale on Ebay. McKee finally admitted bringing Hinds a Vicodin pill that she purchased from him for seven dollars.
 {¶ 9} In his pretrial suppression motion, McKee asserted that "there was neither probable cause nor reasonable suspicion to conduct aTerry stop" and "[therefore, the stop, seizure and search of Defendant violated the Fourth Amendment." At the suppression hearing, McKee confirmed that he was challenging the validity of the "stop." He sought suppression of "everything up to until the point he was taken into the cell, everything from the drugs to the statements]." The trial court overruled the motion. It found that Spiers had reasonable, articulable suspicion of a drug transaction when he approached McKee. In light of McKee's non-compliance with oral commands and furtive movements inside his vehicle, the trial court further found that Spiers acted lawfully in removing McKee from the car and frisking him. The trial court reasoned that Spiers observed the marijuana in plain view. As for the baggie containing two Vicodin pills, the trial court ruled that Spiers lawfully observed it while conducting an inventory of McKee's vehicle.
 {¶ 10} In his first assignment of error, McKee contends Spiers possessed only an "inchoate and unparticularized suspicion" of a drug deal. McKee stresses Spiers' failure to identify or provide details about the citizen who initially contacted police regarding drug activity in the area. McKee also argues that Spiers' observations of a woman using a pay phone and then briefly reaching inside a car did not constitute reasonable grounds to believe a crime had been committed. Finally, he contends the present case is analogous to State v. *Page 5 Maldonado (Sept. 24, 1993), Montgomery App. No. 13530, wherein we found that police lacked reasonable, articulable suspicion for an investigatory detention.
 {¶ 11} Upon review, we agree with the trial court that Spiers lawfully detained McKee to investigate an apparent drug transaction. It is well established that the police may stop and briefly detain people for investigative purposes based on a reasonable suspicion of criminal activity. Terry v. Ohio (1968), 392 U.S. 1. However, a "[r]easonable suspicion entails some minimal level of objective justification for making a stop-that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990),70 Ohio App.3d 554, 556-557. In United States v. Cortez (1981), 449 U.S. 411, the Supreme Court held that the totality of the circumstances must be considered when determining what cause is sufficient to constitute reasonable suspicion. Id. at 417. An assessment of the totality of the circumstances includes two elements. Id. at 418. First, the assessment must be based on all the circumstances, including "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." Id. A series of acts, each of which may be innocent in itself, may together constitute reasonable suspicion. United States v.Arvizu (2002), 534 U.S. 266, 275. Next, the totality of the circumstances must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Cortez, 449 U.S. at 418. The totality of the surrounding facts and circumstances in a case must be "viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold." State v.Andrews (1991), 57 Ohio St.3d 86, 87-88. A reviewing court, therefore, must consider the officer's experience and training, in addition to the evidence as it would be understood by an officer on the street. Id. at 88. *Page 6 
 {¶ 12} In the present case, Spiers received a complaint from a citizen about drug sales in the vicinity of the Speedway gas station. Although he could not recall the individual's name, this fact is not significant. The caller, whose identify was known at the time, merely directed Spiers' attention to a particular area. Moreover, Spiers knew from his own experience that police had made approximately a dozen arrests in the area over the previous year. While conducting surveillance, Spiers observed Hinds repeatedly calling a number from a pay phone then having a brief conversation before returning to her car where she waited for fifteen minutes. When McKee's car arrived, she immediately approached, reached into his driver-side window for a few seconds, and exchanged something with the driver.
 {¶ 13} Based on his twenty-five years of experience and hundreds of arrests, Spiers testified that he believed he had witnessed a drug transaction. He reached this conclusion based on the "brief encounter between the two, reaching into the car after only a few seconds, [Hinds] pulling her hands back from the car and then returning to her car." He also cited "the number of [prior] arrests, the area that we've known that there was drug activity taking place in these businesses." Finally, Spiers added: "We know a lot of people use these pay phones to set up drug deals. The way they pulled in next to each other with the passenger or with the one occupant quickly approaching the other car, it had all the signs that we've seen in the past of a drug transaction."
 {¶ 14} Each act Spiers witnessed may have been innocent when viewed individually. But when viewed collectively, and in the context of his experience, those observations provided him with reasonable, articulable suspicion of criminal activity. We have reached the same conclusion under similar circumstances on other occasions. See, e.g., State v.Etherington, 172 Ohio App.3d 756, 763, 2007-Ohio-4097 (citing cases). McKee's citation to *Page 7 State v. Maldonado (Sept. 24, 1993), Montgomery App. No. 13530, does not persuade us otherwise. In that case, police observed a light-skinned individual in a predominantly black neighborhood appear to emerge from a vacant apartment building and place something in his pocket when he saw them. In Maldonado, we opined that the officers' suspicions of criminal activity amounted to only a "hunch." The facts of the present case are different. Based on the analysis set forth above, we believe Spiers acted on more than a hunch when he approached McKee to investigate. Accordingly, we overrule the first assignment of error.
 {¶ 15} In his second assignment of error, McKee contends Spiers lacked authority to conduct a warrantless search of his car even if the initial investigatory detention was proper. In support, he notes that Spiers observed only a baggie of marijuana and a cell phone on the center console when he removed McKee from the vehicle. Absent any testimony from Spiers about the quantity of marijuana in the baggie, McKee reasons we must assume the marijuana possession was a minor misdemeanor, non-arrestable offense. McKee argues that discovery of the marijuana did not provide any justification for Spiers "to search and interrogate further." He contends the trial court erred in finding that the two Vicodin pills subsequently were discovered during a permissible inventory search. Because Spiers had no grounds for an arrest, McKee claims the officer had no basis for an inventory search.
 {¶ 16} In response, the State first argues that McKee forfeited his challenge to the discovery of the Vicodin pills because he failed to raise the issue below. Alternatively, the State asserts that McKee could have been arrested for fourth-degree felony possession of drug paraphernalia, namely the plastic baggie that held the marijuana, regardless of the quantity of marijuana present. Because McKee was subject to a lawful arrest for possessing the baggie of marijuana, the State argues that Spiers discovered the Vicodin pills during a lawful inventory search. Finally, the State contends Spiers had probable cause to believe *Page 8 
contraband would be found in McKee's vehicle after seeing marijuana in plain view on the center console. Therefore, the State argues that Spiers was entitled to conduct a warrantless search of the vehicle under the automobile exception to the warrant requirement.
 {¶ 17} Upon review, we find McKee's argument to be unpersuasive. As an initial matter, we note that McKee did not raise Spiers' search of his car as an issue below. Although he sought suppression of all evidence obtained by police, presumably as fruit of the poisonous tree, his motion and argument at the suppression hearing addressed only the permissibility of his initial detention. In his motion, McKee alleged that "there was neither probable cause nor reasonable suspicion to conduct a Terry stop" and "[therefore, the stop, seizure and search of Defendant violated the Fourth Amendment." During the subsequent hearing, McKee acknowledged that he was challenging the validity of the "stop."
 {¶ 18} Because McKee never indicated below that he was raising Spiers' allegedly unlawful search of the car as a basis for suppression, the State had no reason to present testimony about the quantity of marijuana found in the baggie seen on the console. Nor did the State have reason to prove that Spiers' discovery of two Vicodin pills in the car fell within an exception to the warrant requirement. The sole basis for McKee's suppression motion was the validity of the initial "stop." In closing argument during the suppression hearing, McKee's counsel asserted only that there was no basis for an investigatory detention under Terry.
 {¶ 19} To obtain suppression of evidence, a defendant must "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." Xenia v. Wallace (1988), 37 Ohio St.3d 216, paragraph one of the syllabus. Because McKee never argued below that Spiers *Page 9 
unlawfully entered his car and discovered the baggie containing Vicodin pills in the driver's door pocket, he has forfeited his ability to raise the issue on appeal. State v. Carter, Montgomery App. No. 21999,2008-Ohio-2588, ¶ 20. The State presented no evidence on that issue and did not address it at the suppression hearing. McKee's failure to raise the issue below deprived the State of an opportunity to present such evidence.
 {¶ 20} In any event, we also agree with the State's alternative argument that Spiers' observation of marijuana in plain view on the center console gave him probable cause to conduct a warrantless search of McKee's vehicle under the well-recognized automobile exception to the Fourth Amendment's warrant requirement. In State v. Greenwood, Montgomery App. No. 19820, 2004-Ohio-2737, we held that an officer's discovery of a small quantity of marijuana leaves and seeds on the front passenger seat and floorboard gave him probable cause to believe the vehicle contained contraband, thereby justifying a warrantless search of the entire vehicle. Id. at ¶ 11, citing United States v. Ross (1982),456 U.S. 798. Similarly, Spiers' observation of marijuana on the center console when he removed McKee from the vehicle gave him probable cause to believe the vehicle contained contraband. Therefore, Spiers lawfully conducted a warrantless search of the vehicle and discovered the baggie containing two Vicodin pills. The second assignment of error is overruled.
 {¶ 21} In his final assignment of error, McKee contends his conviction was against the manifest weight of the evidence. In support, he stresses that no one positively saw a drug transaction, no drugs were found on Hinds, no one observed Hinds swallow any drugs, and no confession was obtained from her. As for Spiers' claim that McKee confessed to selling Hinds a Vicodin pill for seven dollars, McKee argues that Spiers' testimony lacked credibility and was inadequate to sustain a conviction beyond a reasonable doubt.
 {¶ 22} Upon review, we find McKee's argument to be without merit. When a *Page 10 
conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 23} With the foregoing standards in mind, we conclude that McKee's conviction was not against the manifest weight of the evidence. McKee was charged with knowingly selling or offering to sell a controlled substance in violation of R.C. 2925.03(A)(1). Although Spiers did not actually see an exchange of drugs between McKee and Hinds, his observations were consistent with drug transactions he had witnessed before. Moreover, Spiers testified that McKee admitted selling Hinds a Vicodin pill. Spiers also testified, without objection, that McKee told him Hinds had swallowed the pill. McKee's confession to selling Hinds a Vicodin pill was consistent with Spiers' observations and the discovery of two Vicodin pills in McKee's car. The jury reasonably may have believed Spiers' testimony and found McKee's confession to be credible. The evidence in this case does not weigh heavily against McKee's conviction, and the jury's verdict did not create a manifest miscarriage of justice. Accordingly, we overrule the third assignment of error.
 {¶ 24} Having overruled each assignment of error, we affirm the judgment of the Montgomery County Common Pleas Court.
 WOLFF, P.J., and DONOVAN, J., concur. *Page 11 
Copies mailed to:
Mathias H. Heck, Jr. Kirsten A .Brandt J. Allen Wilmes Hon. Dennis J. Langer *Page 1